# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Oliver Lucien Garr,
     Petitioner,

    vs.                      Case No. 1:08cv293
                                   (Dlott, C.J.; Black, M.J.)

Warden, Madison Correctional
Institution,
     Respondent.

---

## REPORT AND RECOMMENDATION

---

Petitioner, an inmate in state custody at the Madison Correctional Institution in London, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on respondent's motion to dismiss and petitioner's "traverse" in response to the motion to dismiss, as supplemented. (Docs. 6, 9, 10).[1]

## Factual And Procedural Background

On April 7, 2006, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with one count of trafficking in cocaine "in an amount that equaled or exceeded 1000 grams," in violation of Ohio Rev. Code § 2925.03(A) (1), and one count of engaging in a pattern of corrupt activity in violation of Ohio Rev. Code § 2923.32(A)(1). (Doc. 6, Ex. 1). A major drug offender ("MDO") specification was attached to the trafficking count. (*Id.*).

---

[1] By separate Order issued this date, the Court has granted respondent leave to supplement his "traverse" in opposition to the motion to dismiss "with relevant case authorities." (*See* Doc. 10). In addition, at the request of a clerk of the Court, respondent has filed a copy of the trial transcript for the Court's consideration in deciding whether or not to grant the motion to dismiss. (*See* Doc. 13).

Petitioner's trial counsel filed a pretrial motion to dismiss the MDO specification attached to the trafficking count on the ground that there was no evidence of any "detectable amount of a controlled substance." (*See id.,* Ex. 2). The motion was overruled on July 19, 2006, and the matter proceeded to trial. (*Id.,* Ex. 3).

After a jury trial, petitioner was found guilty on the trafficking charge and attached MDO specification, but was acquitted of engaging in a pattern of corrupt activity.[2] (*See id.,* Ex. 4). On September 13, 2006, petitioner was sentenced to a ten year mandatory prison term. (*Id.,* Ex. 5).

With the assistance of counsel who represented petitioner at sentencing,[3] petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, raising two assignments of error:

> 1.  The trial court erred in denying defendant's motions to dismiss the MDO specifications and for a verdict of acquittal on those specifications [because the MDO specification was not supported by sufficient evidence].

> 2.  The trial court erred to defendant's prejudice in sentencing him to a mandatory term of ten years [because the evidence was insufficient to support an MDO conviction or sentence for a first-degree-felony cocaine trafficking offense].

(*See id.*, Ex. 6).

On July 6, 2007, the Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.,* Ex. 8).  In its decision, the state appellate court made the following factual findings, which are presumed correct

---

[2]  It appears from the trial transcript that petitioner was also tried in the joint trial on cocaine possession, trafficking and conspiracy charges contained in a separate indictment returned in 2005. (*See* Doc. 13).  Petitioner was acquitted of those charges. (*Id.,* Tr. 891-92).

[3]  As petitioner has indicated in the petition, he was represented by different counsel at trial; Elizabeth Agar, who represented petitioner in the direct review proceedings, first appeared as petitioner's counsel at sentencing. (*See* Doc. 1, p. 14, ¶16).

under 28 U.S.C. § 2254(e)(1),[4] regarding the incident resulting in petitioner's conviction and sentence:

> The facts of this case are largely undisputed. During a sting operation, Garr told police informant Robert Carr that he would sell him two kilograms of cocaine for $42,000. At trial, the state played a series of recorded conversations between Garr and Carr detailing the terms of this transaction, which included two discussions about the quality of the cocaine. Carr and Garr eventually met in a restaurant parking lot with the understanding that Garr was to deliver the cocaine to Carr, and that Carr would pay him for it later. But due to a disagreement over payment, the sale was not completed, and Garr never produced any cocaine. Police monitoring the scene allowed Garr to leave without incident. Garr was not arrested until several months later, and the state never recovered any substance offered for sale in connection with these events.

(*Id.,* p. 2).

Petitioner's counsel timely appealed to the Supreme Court of Ohio. (*See id.,* Ex. 9). On October 31, 2007, the state supreme court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 11).[5]

In the meantime, while his appeal was pending before the state supreme court from the Ohio Court of Appeals' direct appeal decision, petitioner filed various *pro se* pleadings challenging his conviction and sentence.

---

[4] Specifically, 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, he has not shown that such findings are erroneous.

[5] It is noted that on October 9 and 11, 2007, while the appeal filed by counsel was still pending before the state supreme court, petitioner filed *pro se* motions to certify conflict with the Ohio Court of Appeals, First Appellate District. (*See* Doc. 6, Exs. 20-21). Specifically, petitioner argued that the Court of Appeals' direct appeal decision was "in conflict with . . . Fifth and Eighth Appellate District decisions." (*Id.*). On October 31, 2007, the Court of Appeals summarily denied these motions, which it found were "not well taken." (*Id.,* Ex. 26).

First, on August 6, 2007, petitioner filed a *pro se* application pursuant to Ohio R. App. P. 26(B) for reopening of the appeal with the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 12). Petitioner alleged in the application that his appellate counsel was ineffective "for neglecting to raise an abuse of discretion claim within the original appellate brief." (*Id.*). On November 9, 2007, the Ohio Court of Appeals denied petitioner's application to reopen the appeal. (*Id.,* Ex. 15). Respondent states that petitioner did not pursue an appeal from this decision to the Supreme Court of Ohio. (*Id.,* Brief, p. 5).

Second, on September 7, 2007, petitioner filed a *pro se* petition for post-conviction relief with the Hamilton County Common Pleas Court. (*Id.,* Ex. 16). In the petition, petitioner alleged new claims that had not been raised on direct appeal of (1) prosecutorial misconduct; (2) ineffective assistance by trial counsel; (3) trial court error in failing to give a lesser-included-offense jury instruction; and (4) the denial of a fair trial under the "cumulative effect doctrine." (*Id.*). On September 28, 2007, the Common Pleas Court denied the petition as "untimely and not well taken." (*Id.,* Ex. 18).

Finally, on October 23, 2007, petitioner filed a *pro se* motion "to vacate voidable sentence[,] Civil Rule 60(B)" with the Hamilton County Common Pleas Court. (*Id.,* Ex. 22). Petitioner essentially alleged in this motion that his sentence was improperly enhanced "based upon factors determined by the judge" rather than the jury, in violation of his Sixth Amendment rights as recognized by the Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), *Blakely v. Washington,* 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005). (*Id.*).

On November 1, 2007, the Common Pleas Court denied petitioner's motion to vacate sentence, reasoning in relevant part as follows:

Attached to this entry is a copy of the jury's guilty verdict. The jury did make a specific finding of fact [that] the defendant offered to sell cocaine in an amount that <u>DID</u> (emphasis supplied) equal or exceed 1000 grams.

Defendant's attention is further directed to R.C. 2925.03(C)(4)(g) which states in pertinent part as follows:

"If the amount of the drug involved equals or exceeds one thousand grams of cocaine . . ., trafficking in cocaine

is a felony of the first degree, the offender is a major drug offender, and the court <u>SHALL</u> impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree. . ."

It is hornbook law [that] ten years is the maximum period of confinement in the Department of Corrections for a felony of the first degree.

Additionally, this ten year mandatory sentence the tr[ia]l court imposed was specifically addressed by the Court of Appeals and that appellate court affirmed the sentence of the trial court.

(*Id.*, Ex. 27).

Petitioner filed the instant federal habeas corpus petition in April 2008. (*See* Doc. 1). He asserts two grounds for relief, which essentially are the same claims that he raised in the state direct review proceedings:

**Ground One:** The State of Ohio failed to present sufficient evidence to the jury to prove that Mr. Garr was a Major Drug Offender under Ohio law because no evidence was presented as to the weight or identity of the drug involved in the Trafficking Offense to which the Major Drug Offender attached.

**Ground Two:** Under Ohio law, an Offer to Sale is a felony of the Fifth-Degree only punishable by 6-12 months, if the State of Ohio cannot prove beyond a reasonable doubt that the substance actually contained/involved a mixture of identifiable amount of cocaine exceeding the weight limits provided under Ohio . . . law for a more serious offense.

(*Id.*, pp. 6, 8).

In response to the petition, respondent has filed a motion to dismiss. (Doc. 6). Respondent contends that petitioner's claims for habeas relief "are not cognizable because both grounds related to a state law question interpreting a state statute." (*Id.*, p. 8).

Petitioner opposes the motion to dismiss. (Doc. 9). He argues that he has raised claims of a "direct violation of federal due process" because "the State of Ohio failed to prove all essential charging elements," specifically, the element necessary to establish the enhanced penalty for an "offer to sell more than and/or equal to 1000 grams of cocaine . . . as a felony of the first-degree." (*Id.*, p. 2). In support of this argument, petitioner has separately submitted a decision by the Ohio Court of Appeals, Eighth Appellate District, which he contends casts doubt on the decision rendered in this case by the Ohio Court of Appeals, First Appellate District. (Doc. 10, Appendix A).

## OPINION

### Respondent's Motion To Dismiss Should Be Denied; And The Critical Unresolved State-Law Question – Whether *State v. Chandler,* 846 N.E.2d 1234 (Ohio 2006), Applies To This Case – Should Be Certified To The Supreme Court Of Ohio

In the two grounds for relief alleged in the petition, petitioner essentially contends the evidence introduced at his trial was insufficient to establish beyond a reasonable doubt that (1) he committed a first-degree-felony instead of a fifth-degree-felony cocaine-trafficking offense under Ohio Rev. Code §§ 2925.03(A)(1) and 2925.03(C)(4)(g); and (2) a mandatory ten-year sentence was required in this case under the MDO-penalty provision set forth in Ohio Rev. Code § 2925.03(C)(4)(g) based on the jury's determination that petitioner was guilty of a first-degree-felony by offering to sell cocaine in an amount equal to or exceeding 1000 grams. (Doc. 1, pp. 6, 8; *see also* Doc. 6, Ex. 4).

As an initial matter, contrary to respondent's contention in the motion to dismiss, petitioner has asserted cognizable constitutional claims. Specifically, petitioner has alleged that his rights under the Fourteenth Amendment's Due Process Clause were violated because the State failed to meet its burden of proving beyond a reasonable doubt every fact necessary to convict and sentence him for a first-degree-felony cocaine-trafficking offense under Ohio Rev. Code § 2925.03(C)(4)(g), based on the identity and amount of the substance involved in the crime. *See In Re Winship,* 397 U.S. 358, 363-64 (1970); *see also State v. Chandler,* 846 N.E.2d 1234, 1236-37 (Ohio 2006).

As respondent points out (Doc. 6, Brief, pp. 13-14), the federal habeas court

must accept the Ohio courts' interpretation of the state statutory provisions under which petitioner was convicted and sentenced. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). However, the ultimate question whether the evidence presented was sufficient to establish beyond a reasonable doubt the elements of the offense and penalty as defined by state-law are of constitutional dimension and thus within the federal habeas court's authority to address. *See Sanford v. Yukins,* 288 F.3d 855, 860 (6ᵗʰ Cir.), *cert. denied,* 537 U.S. 980 (2002).

The standard of review established by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 (1979), governs the resolution of the constitutional sufficiency-of-evidence claims raised in the instant petition for writ of habeas corpus.

Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original). The inquiry does not involve consideration of the propriety of the jury instructions; indeed, the Supreme Court has noted that the matter is "wholly unrelated to the question of how rationally the verdict was actually reached," and thus does "not require scrutiny of the reasoning process actually used by the factfinder–if known." *See id.* at 318 & 319 n.13.[6]

In assessing whether the evidence of guilt satisfies due process under the *Jackson* standard, the State is not required to rule out every hypothesis except that

---

[6] *Cf. United States v. Castano,* 543 F.3d 826, 835-36 (6ᵗʰ Cir. 2008) (in case involving errors in the verdict form and jury instructions, the Sixth Circuit cited *United States v. Lowe,* 172 Fed.Appx. 91, 94 (6ᵗʰ Cir. 2006) (not published in Federal Reporter), in support of its holding that although the evidence may "well have been sufficient to convict . . ., the errors and confusion that pervaded [the] trial 'deprived the jury of the opportunity to come to that verdict'"); *see also United States v. Korey,* 472 F.3d 89, 94-96 (3ʳᵈ Cir. 2007) (recognizing that "there is an important difference between considerations of the sufficiency of evidence and propriety of jury instructions," the circuit court held that due process was denied when erroneous jury instructions were given which relieved the government of proving "beyond a reasonable doubt that there was a shared goal–a vital aspect of conspiracy" despite "ample evidence" that the defendant shared a common goal to advance the cocaine-trafficking scheme). Here, petitioner has never alleged a denial of due process due to error in the jury instructions; it appears that at this late juncture, any such claim would be dismissed as waived.

of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983). Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the trier of fact which convicted the petitioner. *Jackson* 443 U.S. at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

Moreover, the *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense *as defined by state law.*" *Jackson,* 443 U.S. at 324 n.16 (emphasis added); *see also Sanford,* 288 F.3d at 860. In *Sanford,* the Sixth Circuit discussed the difficulty inherent in distinguishing "pure sufficiency claims from state law claims disguised as *Jackson* claims:"

> *Jackson* establishes that states must act on the basis of sufficient evidence. The principle seems unproblematic.... Implementing *Jackson* is not so easy as stating its principle, however. Judgments represent the application of law to fact. Evidence can be "insufficient" only in relation to a rule of law requiring more or different evidence. When a state court enters or affirms a conviction, it is saying that the evidence satisfies the legal norms. These norms are for the state to select. State law means what the state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254.... The difference between unreviewable legal interpretations and factual claims open under *Jackson* establishes a formidable problem of implementation.

*Sanford,* 288 F.3d at 860 (quoting *Bates v. McCaughtry,* 934 F.2d 99, 102 (7th Cir.), *cert. denied,* 502 U.S. 915 (1991)).

The Sixth Circuit proceeded to lay out different scenarios discussed in *Bates* wherein a defendant may assert the evidence is insufficient to support his conviction. *Id.* at 860-61. Two of these scenarios involve the state courts' legal interpretations of state law, which are not subject to review by way of a back-door sufficiency-of-evidence challenge under *Jackson*:

(1) Defendant believes that the combination of elements X, Y, and Z is an offense. The court disagrees, holding that the state need prove only X and Y. After a trial at which the prosecution introduces no evidence of Z, the court convicts the defendant.

(2) State law defines the combination of elements X, Y, and Z as criminal. Defendant believes that element Z can be satisfied only if the state establishes fact Z', but the state court disagrees. After a trial at which the prosecution introduces some evidence of Z but does not establish Z', the court convicts the defendant.

*Id.*

On the other hand, the following scenario presents a fact-based claim that is open to review under *Jackson*:

State law defines the combination of elements X, Y, and Z as criminal.... The prosecutor and the state courts concede that X, Y, and Z are elements of the crime and agree with the defendant on their meaning. Defendant contends that there is no basis on which the trier of fact could find Z. The state court disagrees and convicts.

*Id.*

In this case, petitioner was convicted as charged in the indictment of offering to sell cocaine "in an amount that equaled or exceeded 1000 grams" in violation of Ohio Rev. Code § 2925.03(A)(1). (*See* Doc. 6, Exs. 1, 4, 5; Doc. 13, Tr. 892). In addition, the jury explicitly found that petitioner offered to sell cocaine in an amount that "did equal or exceed 1000 grams."[7] (Doc. 6, Ex. 4; Doc. 13, Tr. 892).

At the sentencing hearing, petitioner's trial counsel argued that under the Supreme Court of Ohio's decision in *State v. Chandler,* 846 N.E.2d 1234 (Ohio

---

[7] It appears from the record that the trial court did not instruct the jury about any requirements or factors to be considered in making this finding. (*See* Doc. 13, Tr. 825-63). The jury was instructed only as follows in considering the element of an "offer to sell" for purposes of establishing petitioner's guilt for trafficking under Ohio Rev. Code § 2925.03(A)(1): "The State need not prove that the controlled substance was actually transferred or that a controlled substance actually exists to be transferred. The offer to sell is sufficient." (*Id.,* Tr. 846).

2006), petitioner could not be found guilty of the MDO specification because "there were no detectible amounts of a controlled substance here." (Doc. 13, Tr. 904). Counsel further contended in pertinent part:

> And failing [the MDO specification], we are left with a felony of the first degree, which is what the jury found him guilty of.... I am satisfied under *Chandler* that the Court couldn't impose any more than 10 years.... The Supreme Court has spoken very clearly on that issue.
>
> And I would ask your Honor to consider something less than the 10 years and something along the lines of a minimum sentence for a felony of the first degree, in view of the fact that there are no controlled substances at all involved here and his lack of prior adult criminal history and his stability in the community.

(*Id.,* Tr. 904-05).

At that point, the trial judge asked defense counsel whether petitioner was nevertheless subject to a "mandatory 10 years" in prison based on the jury's finding that petitioner had "offered to sell more than a kilo of cocaine;" counsel responded: "Well, under *Chandler* I am not sure," and "I don't want to concede that." (*Id.,* Tr. 905-06). Counsel continued:

> My position is since *Chandler* – if there is no MDO then it defaults to an F1, a straight F1 where the sentence range would be from 3 to 10.... [T]hat it is a mandatory ... sentence of 10 years. I don't want to concede that. I would like the Court of Appeals to take a look at that issue.

(*Id.,* Tr. 906).

The prosecutor counter-argued:

> [T]his is a 10-year mandatory. Offer to sell over 1000 grams is a 10-year mandatory.
>
> The State's position is that the *Chandler* case doesn't apply here and that the specs, the MDO specs, still apply. And the reasoning behind

that is that the ... Supreme Court kept an offer to sell as a violation of its own.

(*Id.*, Tr. 911).  The prosecutor conceded in response to questions posed by the trial judge that "the *Chandler* case leaves more questions than answers," but that "it is still a major F1, mandatory 10." (*Id.,* Tr. 912-13).

After hearing counsel's arguments, the trial court proceeded to impose a "mandatory minimum 10-year prison sentence," apparently because petitioner was convicted of a first-degree-felony offense involving an "offer to sell kilos of cocaine." (*See id.,* Tr. 906-07, 915).  However, the court refused to impose an additional prison term on the MDO specification given its interpretation of *Chandler* as specifically prohibiting an added MDO term based on the facts presented to the jury. (*Id.,* Tr. 915-16).

In *Chandler,* 846 N.E.2d at 1235, the Supreme Court of Ohio considered the issue raised in consolidated appeals "whether an person can be subject to the special penalty statute applicable to a major drug offender for a first-degree felony [cocaine trafficking] conviction when the substance offered ... contains no detectable amount of the drug."   In that case, the court upheld the defendants' trafficking convictions, because "a person can be convicted for offering to sell a controlled substance in violation of R.C. 2925.03(A)(1) without actually transferring a controlled substance to the buyer."  *Id.* at 1236-37 (citing *State v. Patterson,* 432 N.E.2d 802, syllabus (Ohio 1982)).  However, the court held that the crucial question remained whether "R.C. 2925.03(C)(4)(g), the specific section relating to major-drug-offender penalties, provides a penalty for offering to sell ... cocaine when the substance offered as ... cocaine does not actually contain *any* detectable amount of the drug."  *Id.* at 1237.

The court addressed this question in pertinent part as follows:

The penalty provision that relates to drug trafficking cases, RC. 2925.03(C)(4), states at the outset: "If the drug involved in the violation is cocaine *or a compound, mixture, preparation, or substance containing cocaine,* whoever violates division (A) of this section is guilty of trafficking in cocaine.  The penalty for the offense shall be determined as follows [setting forth the various penalties]." (Emphasis added.)

Unless other specific portions of the section apply, trafficking in cocaine is a fifth-degree felony, and there is no presumption for a prison term. R.C. 2925.03(C)(4)(a). The penalty is raised one degree "if the offense was committed in the vicinity of a school or in the vicinity of a juvenile." R.C. 2925.03(C)(4)(b), (c), (d), and (e). If the amount of the drug involved "equals or exceeds five grams but is less than ten grams of cocaine that is not crack cocaine ... or equals or exceeds one gram but is less than five grams of crack cocaine," trafficking in cocaine is a fourth-degree felony, and there is a presumption of a prison term. R.C. 2925.03(C)(4)(c). If the amount is ten grams or more but less than 100 grams of powder cocaine (or five grams or more but less than ten grams of crack cocaine), the offense is a third-degree felony with a mandatory prison term. R.C. 2925.03(C)(4)(d). If the amount is 100 grams or more but less than 500 grams of powder cocaine (or ten grams or more but less than 25 grams of crack cocaine), the offense is a second-degree felony with a mandatory prison term. R.C. 2925.03(C)(4)(e).

If the amount is 500 grams or more but less than 1,000 grams of powder cocaine (or 25 grams or more but less than 100 grams of crack cocaine), the offense is a first-degree felony, and the court shall impose a mandatory prison term. R.C. 2925.03(C)(4)(f).

The penalty section at issue here, R.C. 2925.03(C)(4)(g), states: "If the amount of the drug involved equals or exceeds one thousand grams of cocaine that is not crack cocaine or equals or exceeds one hundred grams of crack cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, *the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed as a felony of the first degree and may impose an additional mandatory prison term* prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code." Thus, this section provides a specific penalty enhancement.

The appellees were charged with violating R.C. 2925.03(A)(1), and the court of appeals properly held that the state was required to prove the identity of the substance as well as a detectable amount of that

substance, not for conviction, but to impose the penalty enhancement of R.C. 2925.03(C)(4)(g). The jury's finding that the amount of the drug equaled or exceeded 100 grams of crack cocaine was contrary to fact, for the substance involved was 130.87 grams of baking soda.

The major-drug-offender penalty that is referred to in R.C. 2925.03(C)(4)(g) is found in R.C. 2929.14(D)(3) and contains two parts. Subsection (a) states that if the offender violates R.C. 2925.03 and is classified as a major drug offender, "the court shall impose *** a ten-year prison term" that may not be reduced by judicial release. The second part, R.C. 2929.14(D)(3)(b), provides, "The court imposing a prison term on an offender under division (D)(3)(a) of this section may impose an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years" under certain conditions. In *State v. Foster*, ... 845 N.E.2d 470 [(2006)], we held that R.C. 2929.14(D)(3)(b) is unconstitutional ... because it required judicial factfinding before an additional ten years of prison could be imposed.... We severed R.C. 2929.14(D)(3)(b) to remedy the constitutional violation.... As the statute now stands, a major drug offender still faces the mandatory maximum ten-year sentence that the judge must impose and may not reduce. Only the add-on that had required judicial fact-finding has been severed....

The General Assembly has authorized a hierarchy of criminal penalties for drug trafficking based upon the identity and amount of the controlled substance involved. By the terms of the penalty statute for cocaine, R.C. 2925.03(C)(4), the substance involved in the violation is to *be* cocaine, or, at the very least, "a compound, mixture, preparation, or substance *containing* cocaine." (Emphasis added). This language presumes that a detectable amount of cocaine is present within the substance before the penalty enhancement applies.

*Chandler,* 846 N.E.2d at 1237-38.

Pursuant to this reasoning, the *Chandler* court held that because the substance offered for sale was baking soda, and thus did not contain a detectable amount of cocaine, the defendants could not be sentenced under Ohio Rev. Code § 2925.03(C)(4)(g). *Id.* at 1238-39. The court further affirmed the judgments of the lower courts of appeals, which had not only vacated both the mandatory and

add-on sentences imposed under Ohio Rev. Code § 2925.03(C)(4)(g), but also the defendants' underlying trafficking convictions based on the State's failure "to prove an essential element of the offense." *See State v. Chandler,* 813 N.E.2d 65, 69, 75-76 (Ohio Ct. App. 5 Dist. 2004) (holding that "in order to sustain a conviction pursuant to R.C. 2925.03(A) and (C)(4)(g)," the state must not only prove "a sale or offer to sell a controlled substance" but also "the identity of the controlled substance and a detectable amount of that substance"); *State v. Bledsoe,* No. 2003CA00403, 2004 WL 2002855, at *2-4 (Ohio Ct. App. 5 Dist. Sept. 7, 2004) (unpublished).

In the state direct review proceedings, petitioner relied on *Chandler* in challenging both his conviction for a first-degree-felony cocaine-trafficking offense and mandatory ten-year sentence under Ohio Rev. Code § 2925.03(C)(4)(g); essentially, he contended that because the substance offered for sale to the informant was never recovered, the evidence was insufficient to establish that a detectable amount of cocaine was present within that substance for purposes of establishing beyond a reasonable doubt petitioner's guilt of a first-degree felony (as opposed to a fifth-degree felony) and automatic classification as a major drug offender under § 2925.03(C)(4)(g). (*See* Doc. 6, Exs. 6, 9).

The Ohio Court of Appeals, which was the last state court to issue a reasoned decision addressing the merits of these claims, overruled petitioner's assignments of error; the court made factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[8] and reasoned in relevant part as follows:

> ....Garr's assignments of error turn on his contention that the state could not establish the weight or identity of the substance he had offered for sale without recovering and testing it. Absent this evidence, Garr argues, the state could not prove the MDO specification but only established that he had committed a fifth-degree-felony trafficking offense, for which he should have been sentenced accordingly.

> Garr cites the Ohio Supreme Court's decision in *State v. Chandler* as controlling authority for both assignments of error.... Unlike the present case, however, in *Chandler* the state had recovered, weighed, and tested the substance offered for sale. It was not crack cocaine. It

[8] *See supra* p. 3 n.4.

was instead 130.87 grams of baking soda. The issue before the *Chandler* court was whether a person could be subject to the penalty-enhancement provision in R.C. 2925.03(C)(4)(g) under these circumstances. In determining that such a penalty was improper, the court held that a substance offered for sale must contain "some detectable amount of the relevant controlled substance" before a person can be sentenced under R.C. 2925.03(C)(4)(g). The court noted that the jury had made a mistake of fact when it had concluded that the baking soda was tantamount to crack cocaine.

This case is different. The issue presented here is whether the state could establish "some detectable amount of the relevant controlled substance"–as required by *Chandler*–as well as the amount of the controlled substance, through circumstantial evidence. We hold that it could. It is beyond question that the state may attempt to establish any element of any crime through circumstantial evidence. We find no reason to make an exception for the elements of R.C. 2925.03(C)(4)(g).

And there is sufficient circumstantial evidence in the record to support [G]arr's conviction and sentence. At trial, the state played recorded conversations between Garr and Carr during which Garr offered to sell cocaine to Carr. The amount of cocaine that Garr had offered to sell was identified multiple times and was never less than two kilograms. During one conversation, Carr indicated that he would not pay for the cocaine if it was counterfeit. During another conversation, Garr represented to Carr that the cocaine he intended to sell him was of high quality.

Viewing this evidence in the light most favorable to the state, we hold that a rational trier of fact could have concluded beyond a reasonable doubt that Garr had offered to sell Carr 1000 or more grams of actual cocaine. We therefore hold that Garr's MDO-specification conviction was supported by sufficient evidence, and that the trial court properly sentenced Garr under R.C. 2925.03(C)(4)(g) as a first-degree felon and as a major drug offender.

(*Id.,* Ex. 8, pp. 3-5) (footnotes omitted).

In the usual case, a federal habeas petitioner is not entitled to relief unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, although the Ohio Court of Appeals did not cite Supreme Court precedent in addressing petitioner's sufficiency of evidence claims, the court utilized the proper standard of review established by the Supreme Court in *Jackson* in assessing whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt the essential elements of a first-degree-felony cocaine-trafficking offense and MDO classification under Ohio Rev. Code §§ 2925.03(A)(1) and 2925.03(C)(4)(g). (*See* Doc. 6, Ex. 8, p. 4).

The Ohio Court of Appeals also properly recognized that "[c]ircumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6ᵗʰ Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6ᵗʰ Cir. 2000)). (*See also* Doc. 6, Ex. 8, p. 4). However, for such evidence to be meet the standard of due process, it must be enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796-97 (and Sixth Circuit cases cited therein); *see also United States v. Slewa,* No. 06-20519, 2008 WL 5244353, at *6 (E.D. Mich. Dec. 16, 2008) (unpublished).

> There is no bright line test to determine when facts amount to only a reasonable speculation and not to sufficient evidence. However, where the evidence taken in the light most favorable to the prosecution creates only a reasonable speculation [that an essential element has been proven], there is insufficient evidence to satisfy the *Jackson* standard.

*Newman,* 543 F.3d at 799.

In considering the sufficiency-of-evidence issue, the Ohio Court of Appeals distinguished *Chandler* based on certain circumstantial evidence presented at trial as well as the fact that, in contrast to *Chandler,* no evidence was introduced to refute the jury's factual finding that the substance offered for sale was cocaine. Apparently conceding that the standards enunciated in *Chandler* governed the disposition of the issue, the court acknowledged that the substance offered for sale was never recovered, and thus could not be tested to determine if it contained a detectable amount of cocaine; however, the court concluded that statements made during conversations between petitioner and the informant in setting up the transaction that ultimately fell through, about the quality and amount of the cocaine to be sold, was sufficient to support the reasonable inference that the substance

offered actually was cocaine.  (*See id.*).

It is well-settled that federal habeas courts generally are bound by the state court's interpretation of state law that was "announced on direct appeal of the challenged conviction."  *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (citing *Estelle,* 502 U.S. at 67-68, and *Mullaney v. Wilbur,* 421 U.S. 684, 691(1975)).  However, by the same token, the highest court of the state is the final arbiter of the state-law issue; therefore, "[w]hen it has spoken, its pronouncement is to be accepted by federal courts as defining state law."  *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 236 (1940); *see also Hicks v. Feiock,* 485 U.S. 624, 629-30 & n. 3 (1988) (applying *West* standard in federal habeas case).

In the absence of prevailing authority from the state's highest court, the federal court must "ascertain from all available data what the state law is and apply it rather than ... prescribe a different rule, however superior it may appear from the viewpoint of the 'general law' and however much the state rule may have departed from prior decisions of the federal courts."  *West,* 311 U.S. at 237.  "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  *Id.* (and cases cited therein); *see also Hampton v. United States,* 191 F.3d 695, 701 (6th Cir. 1999) (citing *Hicks,* 485 U.S. at 630 n.3); *cf. Lawler v. Fireman's Fund Ins. Co.,* 322 F.3d 900, 903 (6th Cir. 2003).

Here, the parties have not cited, nor could the undersigned find, any state supreme court case addressing the specific issues that have arisen in applying *Chandler* to the unique factual circumstances of this case – *i.e.*, whether *Chandler* is limited to cases where evidence has been presented demonstrating that the substance offered for sale was counterfeit, unavailable for sale, or otherwise lacking a detectable amount of cocaine as represented by the defendant; or whether *Chandler* can otherwise be reasonably distinguished from the instant case, where it is undisputed that the substance was never observed or recovered and petitioner's guilt under the enhanced penalty provision can be inferred only from statements made by defendant in setting up the sales transaction with the informant regarding the quality and amount of cocaine involved in the proposed sale.

Recently, in an unpublished decision, another state appellate court expressed serious concerns about the Ohio Court of Appeals' decision in the instant case.  *See*

*State v. Mitchell,* No. 08 JE 5, 2008 WL 5412414, at *5 (Ohio Ct. App. 7 Dist. Dec. 16, 2008) (unpublished). In *Mitchell,* the court held that the evidence was insufficient to support the defendant's conviction on a heightened, third-degree-felony trafficking charge, where the amount offered "was said to equal or exceed the bulk amount" under the enhanced penalty provision set forth in Ohio Rev. Code § 2925.03(C)(1)(c). In that case, the defendant accepted payment from an informant for the purchase of six 80 milligram tablets of Oxycontin, but the sale was never completed because the defendant was unable to procure the pills. *See id.* at *1.

In reversing the defendant's conviction under the penalty enhancement, the Seventh District Court of Appeals refused to distinguish *Chandler* as the Ohio Court Appeals had in the instant case, and instead determined "that there is no valid reason for us to distinguish appellant's offer to sell Oxycontin resulting in no sale and Chandler's offer to sell crack cocaine resulting in the sale of baking soda. *Id.* at *5. Finding it "highly debatable" that the "*Garr* court's interpretation and method of distinguishing *Chandler* were correct," the *Mitchell* court went on to distinguish *Garr* because no evidence had been introduced "circumstantial or otherwise that there was detectable amount of Oxycontin in some drugs offered for sale," but rather only evidence that "appellant was attempting to find some Oxycontin and that he never did find any pills to purchase in order to resell them to the informant." *Id.*

In so ruling, the court continued in dicta to criticize the Court of Appeals' decision in the instant case as follows:

> Notably, there is an appellate case out of the Eight[h] District, which is contrary to the First District's *Garr* case and which was decided while the *Chandler* appeal was pending in the Supreme Court. *State v. Elliot,* 8th Dist. No. 86461, 2006-Ohio-1092. In *Elliott,* the defendant offered to sell a quarter of an ounce of crack cocaine for $200 to an undercover officer. The officer said that after he tried the crack that he had just purchased for $20 from the defendant, he may return for the quarter ounce.... The defendant was immediately arrested. The $20 rock turned out to be baking soda and the verbally offered quarter ounce of crack cocaine was never recovered.
>
> The defendant was convicted on the following counts: (1) trafficking in a counterfeit substance by selling the rock of baking soda; (2)

offering to sell the quarter ounce of crack cocaine that was never produced; and (3) offering to sell the $20 worth of crack cocaine that turned out to be baking soda. It is the treatment of the second count that is relevant to our analysis. Regarding this count, the defendant's penalty was enhanced to a third degree felony upon the jury's finding that he offered to sell an amount equaling or exceeding five grams but less than ten grams.

The Eighth District upheld the drug trafficking conviction for the offer to sell crack cocaine under count two.... However, the court held that the state did not provide sufficient evidence to sustain the penalty enhancement to a third degree felony.... Adopting the Fifth District's *Chandler* analysis as to the penalty enhancement, the Eighth District concluded that the state was required to prove a specific amount of the drug actually existed in order to obtain the penalty enhancement.... Thus, the *Elliott* court modified the conviction for offering to sell the quarter ounce from a third degree felony to a fifth degree felony, which is the lowest crack cocaine penalty provided in R.C. 2925.03(C)....

Considering that we now have the benefit of the Supreme Court's *Chandler* decision in a baking soda case, the *Elliott* court's handling of the issue of a case involving drugs that were never produced or recovered has even more support. We note here the Ohio Attorney General's Amicus Brief in the Supreme Court's *Chandler* case specifically equated the defendant who sells a counterfeit substance with a defendant who does not have any substance. That brief stated:

> "This case, rather, turns on whether R.C. 2925.03 applies to individuals who offer to sell crack that turns out not to exist, either because it is fake *or because the defendant literally has nothing to sell.*" (Emphasis added).

To conclude this analysis, the Supreme Court's *Chandler* case ruled that the penalty enhancement provisions in the drug trafficking statute cannot be used where there is no detectable trace of the alleged substance. Pursuant to this precedent, then we hold that where a defendant offers to sell six Oxycontin tablets but is unable to procure the pills for resale, the state has failed to show a detectable amount of

a controlled substance as required for penalty enhancement. There is no reason to distinguish between Chandler's baking soda that did not contain drugs and appellant's complete lack of drugs. This is especially true in a case where it is established that appellant unsuccessfully went looking for drugs to resell and kept meeting with the informant thereafter (as opposed to *Garr* where the court thought the defendant may have actually had [cocaine] to sell but merely failed to hand it over due to a failure to produce payment)....

*Id.* at *5-6.[9]

The issues posed in the instant case are troubling. It appears from the record that both the trial court and the Ohio Court of Appeals were persuaded that *Chandler* applied to petitioner's case. Specifically, it appears that the trial court determined that because no cocaine was ever observed or recovered, *Chandler* applied to preclude any enhancement of petitioner's sentence on the MDO specification. However, the court apparently did not recognize the extent of the *Chandler* holding as prohibiting not only an "add-on" sentence based on petitioner's classification as a major drug offender, but also petitioner's conviction and sentence to a mandatory maximum ten-year term for a first-degree-felony cocaine-trafficking offense under Ohio Rev. Code § 2925.03(C)(4)(g). *See Chandler,* 846 N.E.2d at 1239 (affirming appellate court decisions); *see supra* p. 14.

In contrast, apparently realizing that petitioner's conviction and mandatory ten-year sentence were also subject to reversal under the trial court's interpretation of *Chandler*, the Ohio Court of Appeals determined that the facts of this case were sufficiently distinguishable from *Chandler* to constitute circumstantial evidence sufficient to support the reasonable inference that the substance offered for sale to the informant actually was cocaine.

This case falls within the category of cases open to review under *Jackson* to the extent the Ohio courts agreed that *Chandler* applies as requiring proof beyond a reasonable doubt of a detectable amount of cocaine before petitioner could be subjected to the enhanced penalty provision set forth in Ohio Rev. Code § 2925.03(C)(4)(g), and petitioner claims that there is no basis on which the trier of

---

[9] Petitioner has submitted a copy of the Eighth Appellate District's *Elliott* decision for this Court's consideration as an attached exhibit to his supplemental pleading in opposition to respondent's motion to dismiss. (*See* Doc. 10, Appendix A).

fact could have found that fact beyond a reasonable doubt. Upon close review of the trial transcript, the undersigned has serious concerns about the "circumstantial evidence" presented at petitioner's trial, which was relied on by the Ohio Court of Appeals in upholding petitioner's qualification for the enhanced penalty. An extremely close question is presented here as to whether such evidence is enough to support a permissible *inference*, as opposed to a reasonable *speculation*, that petitioner actually had the cocaine with him to sell to the informant if an agreement could have been reached regarding payment at their final meeting.[10]

On the other hand, upon review of the Ohio Court of Appeals' decision in this case, it appears that the court also sought to distinguish *Chandler* in light of the affirmative evidence presented in that case, which demonstrated that the jury was mistaken in finding under Ohio Rev. Code § 2925.03(C)(4)(g) that the substance offered for sale was cocaine. (*See* Doc. 6, Ex. 8, pp. 3-4). Although the Court of Appeals did not go so far as to conclude that *Chandler*'s holding is limited to cases where the jury's factual finding is refuted by the evidence, the distinction made does raise a state-law question which is highly pertinent to the disposition of this case because, if it is decided in the State's favor, the Court would not have to decide the extremely close, fact-based sufficiency-of-evidence claim open to review under *Jackson*.

It appears that no state court, including the Ohio Court of Appeals in the instant case, has directly considered the state-law issue posed herein – *i.e.*, whether *Chandler* extends to prohibit a conviction for a first-degree-felony cocaine-trafficking offense and mandatory ten-year sentence under the enhanced-penalty provision of Ohio Rev. Code § 2925.03(C)(4)(g), where the actual substance offered for sale is never produced or recovered for purposes of establishing a

_____

[10] Certainly, as the Ohio Court of Appeals found, there were conversations between the parties about the quality and amount of cocaine involved in the offer to sell made by petitioner to the informant. However, the informant testified that he "never saw [petitioner] with cocaine," and that although he believed petitioner was bringing the cocaine to sell to the informant at their final meeting, he did not see any "dope or cocaine" in petitioner's black car where the parties met for "roughly" 30 minutes in an attempt to work out logistical problems with the sale. (Doc. 13, Tr. 682-83, 694-95, 699-700). The investigator, who was present conducting surveillance at the scene, also testified that he did not believe the cocaine was in the black car, but rather was brought in another car parked at a nearby gas station. (*Id.,* Tr. 724). Tellingly, he stated: "That's what my belief is. It's nothing more than a belief." (*Id.*).

detectable amount of cocaine, but also no affirmative evidence is presented to cast doubt on the petitioner's representations to the informant regarding the identity and weight of the substance or to otherwise refute the jury's finding that the substance offered for sale was cocaine in "an amount that did equal or exceed 1000 grams."

As discussed above, other state appellate courts have criticized the Court of Appeals' decision in this case and have concluded that *Chandler* extends to cases where the offer to sell does not result in an actual sale, and no illegal substance is produced or recovered. *See, e.g., Mitchell, supra,* 2008 WL 5412414, at *5-6; Doc. 10, Appendix A. Those cases, however, are also distinguishable from the case-at-hand because, as in *Chandler,* the affirmative evidence demonstrated that the defendants had not actually procured the drugs offered for sale and, therefore, lacked a detectable amount of the controlled substance required for a penalty enhancement. *See id.*

Both the Supreme Court of Ohio in *Chandler* and the Ohio Court of Appeals in the instant case emphasized that testing had revealed that the substance offered for sale in *Chandler* was baking soda, not crack cocaine. Indeed, the court in *Chandler* posited: "Holding that the penalty enhancement for a major drug offender applies when any substance over 100 grams–baking soda, face powder, powdered sugar, or the like–is represented to be 'crack cocaine' contradicts the statute." *Chandler,* 846 N.E.2d at 1238-39. The court went on to point out that the Ohio legislature had "already specifically proscribed the activity present in this case as trafficking in counterfeit controlled substances," the violation of which was classified only as a felony of the fourth or fifth degree. *Id.* at 1239.

As the prosecutor stated at petitioner's sentencing, *Chandler* presents more questions than answers, particularly in a case such as this where, in contrast to *Chandler*, there is no evidence in the record even remotely suggesting that petitioner did not have any cocaine to sell, or that he made false representations to the informant regarding the identity and weight of the substance he was offering to sell. If the Ohio Court of Appeals had directly addressed and answered the unresolved state-law question posed herein in the State's favor, by holding as a matter of law that *Chandler* is distinguishable from and thus inapplicable to the case-at-hand, this Court would have been bound by the state court's determination upholding petitioner's conviction and sentence on that state-law ground. *See Walker v. Timmerman-Cooper,* No. 1:05cv103, 2006 WL 3242101, at *8-9 (S.D. Ohio Oct. 5, 2006) (Report & Recommendation) (Black, M.J.) (unpublished)

(holding that although Ohio law was unclear regarding a certain element required to be proven by the State, the federal habeas court was bound by the Ohio appellate court's ruling on that state-law issue), *adopted,* 2006 WL 3803235 (S.D. Ohio Nov. 7, 2006) (Spiegel, S.J.) (unpublished); *see also Gimotty v. Elo*, 40 Fed.Appx. 29, 32 (6th Cir. Apr. 25, 2002) (not published in Federal Reporter) (citing *Davis v. Strack,* 270 F.3d 111, 123 n.4 (2nd Cir. 2001)), *cert. denied,* 537 U.S. 894 (2002); *Johnson v. Rosemeyer,* 117 F.3d 104, 108 (3rd Cir. 1997).[11]

Therefore, in the interest of comity, the undersigned concludes that the Supreme Court of Ohio should first be afforded the opportunity to consider the unresolved state-law question posed in this case, which may moot the Court's consideration of the extremely close, fact-based sufficiency-of-evidence claim open to review under *Jackson* based on *Chandler*.

Accordingly, in sum, respondent's motion to dismiss (Doc. 6) should be **DENIED**.  In addition, the undersigned **RECOMMENDS** that the following question of Ohio law, which may be "determinative of the proceeding and for which there is no controlling precedent" in the Ohio courts, be certified to the Supreme Court of Ohio in accordance with the procedure set forth in Rule XVIII of the Rules of Practice of the Supreme Court of Ohio, *see* Rule XVIII, § 1, of the Rules of Practice of the Supreme Court of Ohio:

---

[11]  *Cf. Estelle,* 502 U.S. at 67-68; *Warner v. Zent,* 997 F.2d 116, 133 (6th Cir. 1993) (absent a showing of "extreme circumstances where it appears that the [state court's] interpretation of [state law] is an obvious subterfuge to evade consideration of a federal issue," the federal habeas court is bound by the state court's determination of state law) (quoting *Mullaney,* 421 U.S. at 690-91), *cert. denied,* 510 U.S. 1073 (1994).

Whether the Supreme Court of Ohio's decision in *State v. Chandler,* 846 N.E.2d 1234 (Ohio 2006), prohibiting a first-degree-felony cocaine-trafficking conviction and sentence under the enhanced penalty provision of Ohio Rev. Code § 2925.03(C)(4)(g) where the substance offered for sale does not contain a detectable amount of the drug, applies to this case; or, in other words, whether *Chandler*, which involved the sale of a counterfeit substance, extends to cases where the substance offered for sale was never observed, tested or recovered to ascertain whether it contained a detectable amount of cocaine, and no affirmative evidence was presented to call into question the defendant's representations, or to refute the jury's factual finding, that the substance in fact was cocaine in an amount equal to or exceeding 1000 grams.

Respondent, as the party requesting the dismissal of the federal habeas corpus petition on the ground that petitioner has asserted non-cognizable state-law claims, should be designated as the moving party. Moreover, nothing in the certification, including the particular phrasing of the foregoing question, should be deemed as limiting the Supreme Court of Ohio in its consideration of the state-law question presented herein.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 6) be **DENIED.**

2. **IT IS FURTHER RECOMMENDED** that this case be **STAYED** pending the Supreme Court of Ohio's consideration of the following state-law question, which the undersigned **RECOMMENDS** should be **CERTIFIED** to the state supreme court to answer in accordance with Rule XVIII of the Rules of Practice of the Supreme Court of Ohio:

Whether the Supreme Court of Ohio's decision in *State v. Chandler,* 846 N.E.2d 1234 (Ohio 2006), prohibiting a first-degree-felony cocaine-trafficking conviction and sentence under the enhanced penalty provision of Ohio Rev. Code § 2925.03(C)(4)(g) where the substance offered for sale does not contain a detectable amount of the drug, applies to this case; or, in other words, whether *Chandler*, which involved the sale of a counterfeit substance, extends to cases where the substance offered for sale was never observed, tested or recovered to ascertain whether it contained a detectable amount of cocaine, and no affirmative evidence was presented to call into question the defendant's representations, or to refute the jury's factual finding, that the substance in fact was cocaine in an amount equal to or exceeding 1000 grams.

Date:   3/2/09          s/Timothy S. Black          
　　cbc              Timothy S. Black
                  United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

Oliver Lucien Garr,
     Petitioner

     vs                       Case No. 1:08cv293
                                (Dlott, J.; Black, M.J.)

Warden, Madison Correctional
Institution,
     Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).